# EXHIBIT A

RECEIVED
AUG 3 0 2002
TOWN CLERK
BURLINGTON, MA

## FINDINGS AND DECISION

Re: Application of Joseph R. Mullins Company for a Comprehensive Permit in Burlington, Massachusetts

DATE: August 20, 2002

Bk: 36603 Pg: 395
Recorded: 10/03/2002
Document: 00000507 Page: 1 of 15

### Procedural History

On or about February 28, 2002, Kimball Woods LLC (hereinafter, the Applicant), applied for a Comprehensive Permit pursuant to M.G.L. Chapter 40B, to construct rental apartment units to be located off Pearl Street (said street being in Woburn) and shown on Assessor's Map 31 as Parcel 130 (hereinafter the Property).

A duly advertised public hearing was opened on March 19, 2002, and continued through the following dates: April 2, 2002, April 16, 2002, and June 18, 2002, with a site walk conducted on April 27, 2002.

The public hearing was closed on June 18, 2002. The Applicant agreed to an extension of time for the filing of the Decision in letters dated July 24, 2002, August 13, 2002 and August 21, 2002, extending the deadline for filing the Decision to August 30, 2002.

The following documents and exhibits were received as part of the Application or during the public hearing process and are hereby incorporated by reference into this Decision:

- The Application together with exhibits 1 through 15, inclusive.

- Plan of Land entitled "Kimball Woods Preliminary Site Development Plans", dated February 24, 2002, prepared by H.W. Moore Associates, Inc.

- Architectural plans entitled "Kimball Woods, Burlington, Massachusetts", dated January 14, 2002, prepared by Russell Scott Steedle & Capone Architects Inc.

- "Traffic Impact and Access Study, Kimball Woods, Burlington, MA." dated March 22, 2002, prepared by H.W. Moore Associates, Inc.

- "Storm Runoff Analysis and Erosion Control Requirements, Kimball Woods, Burlington, Massachusetts" dated February 12, 2002, prepared by H.W. Moore Associates, Inc.

A TRUE COPY ATTEST
Jane R. C...
TOWN CLERK

Town Departmental recommendations and e-mails:

- Memorandum of the Planning Director to the Board of Appeals dated March 19, 2002.
- Memorandum of the Planning Director to the Board of Appeals dated June 18, 2002.
- Memorandum of the Board of Health to the Town Administrator dated May 14, 2002.
- Memorandum from the Town's consultant, MHJ Associates, dated July 16, 2002.
- Memorandum from the Fire Department to the Town Administrator dated July 17, 2002.
- Memorandum from the DPW Director and Town Engineer to the Town Administrator dated July 18, 2002.
- Memorandum from the Inspector of Buildings to the Town Administrator dated June 18, 2002.
- Memorandum from the Police Department to the Town Administrator dated July 26, 2002.
- E-mail memorandum from the Fire Department to the Town Administrator dated March 5, 2002.
- E-mail memorandum from the Fire Department to the Town Engineer and Planning Director dated March 14, 2002.

Correspondence from the Applicant:

- Memorandum from Riemer & Braunstein LLP to the Board of Appeals dated May 7, 2002, in response to the comments of the Planning Staff and Fire Department.
- Memorandum from Riemer & Braunstein LLP to the Board of Appeals dated June 7, 2002, with supplemental traffic analysis by H.W. Moore Associates.
- Memorandum from Riemer & Braunstein LLP to the Board of Appeals dated June 18, 2002, for clarification of limitations imposed on a "Limited Dividend Organization".
- Memorandum from Riemer & Braunstein LLP to the Board of Appeals dated August 19, 2002, in response to the draft Comprehensive Permit Decision and comments from Town Counsel.

The Board of Appeals deliberated on August 20, 2002.


A TRUE COPY ATTEST:
Jane R. Chen
TOWN CLERK
MASSACHUSETTS

## FINDINGS

The Board of Appeals makes the following findings with regard to the Project's compliance with M.G.L Chapter 40B, Sections 20 through 23 ("Chapter 40B").

1. The Comprehensive Permit Application of Kimball Woods, LLC has been found to meet the following procedural requirements:

    (a) Kimball Woods, LLC is a limited dividend organization within the meaning of Massachusetts General Laws, Chapter 40B and 760 C.M.R. 31.01(1)(a) and distributions shall be limited according to Chapter 40B and the applicable regulatory agreement governing the pertinent housing programs providing the subsidy for the Project. The restriction on dividends shall be governed by the terms of the applicable Regulatory Agreement governing the Project and applicable regulations governing affordable units created pursuant to M.G.L. Chapter 40B or any successor statute, provided, however, that the release of the restriction on dividends does not affect any of the other obligations set forth in this permit regarding the affordable units required hereunder.

    (b) The Project is fundable by a subsidizing agency using the New England Fund ("NEF") from the Federal Home Loan Bank of Boston ("FHLBB"), and thus complies with 760 C.M.R. 31.01(1)(b).

    (c) The Applicant has sufficient control of the Site pursuant to 760 C.M.R. 31.01 (1)(c).

    (d) The number of low or moderate income housing units in the Town of Burlington (the "Town") constitutes less then ten percent (10%) of the Town's total housing units as reported in the latest decennial census of the Town and reported by the Department of Housing & Community Development ("DHCD") as of July 1, 1997 (Chapter 40B units certified by DHCD at the time of application) and April 24, 2002.

    (e) The Project as herein proposed is consistent with local needs of the Town of Burlington within the meaning of M.G.L. Chapter 40B, Section 20.

2. The Town of Burlington has not met the statutory minimum set forth in M.G.L. Chapter 40B, Section 20 or 760 C.M.R. 31.04 nor is affordable housing located on sites comprising one and one-half percent or more of the total land area zoned for residential, commercial, or industrial use. The development of affordable units consistent with this Application will result in the commencement of such housing on sites comprising more than three tenths of one percent of such land area.

Kimball Woods Decision – Page 3
August 20, 2002

A TRUE COPY ATTEST
Jane R. Chew
TOWN CLERK
 ... USET.P

3. The subject property is located on Assessor's Map 31, Parcel 130, in Burlington, Massachusetts. The property contains approximately 30.92 acres and is zoned One Family Dwelling (RO) District as set forth on the official Zoning Map and in the Zoning Bylaw of the Town of Burlington.

4. The original Application proposed to develop 201 apartment units in one seven story building. During the public hearing, the Town initiated discussions with the Applicant regarding increasing the number of units to in the proposed development to 250 units. The Applicant was amenable to this requested increase in the number of units. Therefore, the Board of Appeals renders this Decision for 250 units subject to the review procedures set forth in Section 3 of the <u>DECISION</u> Section, below.

5. As proposed, and pursuant to M.G.L. Chapter 40B and the regulations promulgated thereunder, twenty-five (25%) percent of the units will be restricted for lease/rental by households at or below eighty (80%) percent of the Boston area median household income. This is consistent with the requirement of the Housing Appeals Committee (HAC) for New England Fund projects.

6. The Applicant's financial information is in compliance with the requirements of M.G.L. Chapter 40B and the regulations promulgated thereunder.

<u>DECISION</u>

Pursuant to M.G.L. Chapter 40B, the Board of Appeals of Burlington, after a public hearing and the above-noted findings, hereby grants a Comprehensive Permit ("Permit") to the Kimball Woods LLC, for the construction of up to 250 apartment units, with associated infrastructure improvements, subject to the following terms and conditions:

1. Subject to the provisions of Section 3, below, the Project as constructed shall not initially exceed 201 dwelling units, as detailed in the Preliminary Plan entitled "Kimball Woods Preliminary Site Development Plans", dated February 24, 2002, prepared by H.W. Moore Associates, Inc. The Preliminary Plan, or any subsequent plan consistent with this Permit and having been approved by the Zoning Board of Appeals as an "insubstantial change" in accordance with 760 C.M.R. 31.03 (1), is hereby incorporated into this Decision by reference.

2. Prior to the issuance of a Building Permit, the Applicant shall prepare a Final Plan detailing the approved design, as modified below, of the Project including the following detail sheets: Existing Conditions Plan; Site Layout and Materials Plan; Proposed Grading and Drainage; Utilities; Proposed Traffic Improvements and Traffic Safety Signage Summary; Detail Sheet specifying design of Drainage Structures, Sewer Manholes, Infiltration Systems, and Retaining Walls; Profile in Grade Plan of Drainage, Water and Sewer Lines; Parking Table; Landscape Plan.

Kimball Woods Decision – Page 4
August 20, 2002


A TRUE COPY ATTEST:
Jane R. Clews
TOWN CLERK

3. The Project as constructed shall not exceed a total of 250 dwelling units (provided that the Applicant shall not construct more than 201 units until the Applicant submits a revised plan to the Board of Appeals demonstrating that there is sufficient parking for the added units and provided further that the Applicant provides the Board of Appeals with evidence that the construction of such units does not have an adverse effect on safety or traffic conditions as verified by the various Town boards and departments which shall have an opportunity to comment to the Board of Appeals on the additional units). The 201 units initially authorized by this Permit are detailed on the Preliminary Plan entitled "Kimball Woods Preliminary Site Development Plans", dated February 24, 2002, prepared by H.W. Moore Associates, Inc. The Preliminary Plan, or any subsequent plan consistent with the Comprehensive Permit and having been approved by the Board of Appeals as an insubstantial change in accordance with 760 C.M.R. 31.03(1), is hereby incorporated into this Decision by reference. The Applicant shall notify the Board if it elects not to proceed with constructing units in excess of 201.

4. Twenty-Five (25.0%) of all units constructed pursuant to this Permit shall be reserved for rental or lease by households at or below eighty (80%) percent of the Boston Primary Metropolitan Statistical Area median household income for a period of 99 years, or for as long as the development is not in full conformity with the Town's Zoning Bylaw, whichever is longer. The affordable units shall not be situated so as to segregate the affordable units from the market rate units.

5. Preference for the leasing of 70% of the affordable units shall be given to Burlington residents, children and parents of Burlington residents, and/or employees of the Town of Burlington, pursuant to a lottery or selection process (reviewed and approved by Town Counsel) administered by the Applicant, with an annual report of leasing activity submitted to the Burlington Housing Partnership.

6. As part of its Application for the Comprehensive Permit, the Applicant has submitted a Regulatory Agreement and a Monitoring Agreement. Prior to the issuance of any Building Permit, the Applicant shall submit the final draft of a Regulatory Agreement to the Board of Appeals for approval as to form by its Town Counsel. The Regulatory Agreement shall contain, at a minimum, the following terms: The affordable units shall be restricted as affordable for 99 years, or for as long as the development is not in full compliance with the Town's Zoning Bylaw, whichever is longer, to households with less than 80% of the Boston area median income; The Monitoring Agent for this Project shall be an entity designated by the Board of Selectmen.

7. Prior to the issuance of the Certificate of Occupancy, the Applicant shall submit the final draft of the Monitoring Agreement to the Board of Appeals for approval, as to form, by its Town Counsel.

8. The affordable units of the Project shall consist of a 45% two bedroom and 55% one bedroom mix, consistent with the overall Project.

9. All units shall be connected to public water and sewer facilities at the Applicant's sole cost and expense.

10. In the event that the water supply for the Project is to be provided from Burlington, the Applicant shall be required to either (a) connect the existing dead end water main at Beacon Street to the existing dead end water main in Peach Orchard Road, providing a looped water main to serve the proposed building; or (b) the Applicant shall propose alternative arrangements acceptable to the Town's DPW Superintendent and/or Fire Department, which approval shall not be unreasonably withheld. The location and design of such water line shall be subject to review and approval of the DPW Superintendent. Where the system may need to be constructed outside Town boundaries, the Applicant shall pursue construction approval from the City of Woburn as may be required. Where the system may be proposed to be constructed outside of existing easements, the Applicant shall pursue such easements from the affected property owner(s).

11. The Applicant shall comply with all State Building and Fire Code requirements.

12. The Applicant shall submit to the Building Department structural drawings for all proposed retaining walls within the Project. All structural drawings shall be designed and certified by a professional structural engineer. Prior to the issuance of a Final Occupancy Permit, the Applicant shall submit to the Building Department a certification from a professional engineer that the retaining walls were designed in accordance with the approved structural drawings.

13. Prior to the issuance of a Final Certificate of Occupancy, the Applicant shall submit an as-built plan of all underground utilities (including telephone, electric, gas, water, sewer, storm drainage) serving the building to the Inspector of Buildings, Town Engineer, Board of Appeals and Planning Board for future reference purposes. The as-built shall include horizontal and vertical ties from any handholes, manholes, valves, gates, cleanouts, tees, elbows, bends, etc. to fixed points of reference.

14. Prior to the issuance of a Final Certificate of Occupancy, all landscaping as reflected on the Landscaping Plan prepared by H.W. Moore Associates, Inc., dated February 24, 2002, shall be installed. The Applicant may provide a bond to cover the full amount of the landscaping materials and installation if weather conditions do not

A TRUE COPY ATTEST:

Jane R. Chen

TOWN CLERK
BURLINGTON, MASSACHUSETTS

permit the completion of the landscaping prior to anticipated occupancy of the building. All landscaping shall be properly maintained in a healthy condition in perpetuity.

15. The Final Site Plan shall reflect the location of the Fire Department connections, fire hydrant(s), and "Fire Lane" striping as required by the Burlington and/or Woburn Fire Departments.

16. Confined spaces shall comply with 29 C.M.R. 1910.146 and shall be listed with the Fire Department.

17. A fully addressable alarm system shall be installed and monitored by a Master Box.

18. The Applicant shall be required to file for a dumpster permit with the Fire Department.

19. The building and garage shall be fully sprinkled with standpipes in the stairwells and garage.

20. The Applicant shall work with the Fire Department to customize the 911 emergency system to provide specific locations of emergency calls.

21. Any proposed construction activity within 100' of any wetland or resource area shall be submitted to the Conservation Commission for review and approval in accordance with the Massachusetts State Wetlands Act. The Applicant shall comply with all conditions of any Order of Conditions issued thereunder.

22. Prior to the submission of the Final Site Plan to the Building Department and simultaneous with the submission of a Notice of Intent to the Conservation Commission, the Applicant shall prepare and submit a Stormwater Pollution Prevention Plan ("Prevention Plan") that addresses the control of runoff and sediment during construction. This Prevention Plan shall be submitted to the Conservation Commission for review and approval with input from the Board of Health staff. The Prevention Plan shall detail sediment controls to be used throughout each phase of the construction sequence. The Prevention Plan shall include the location of stockpiling areas, temporary stabilization of stockpiled materials, dewatering methods and specifications, procedures to monitor for and manage contaminated soil if detected, measures to temporarily stabilize exposed surfaces, and a contingency plan in the event that any contamination is encountered on the Site.

23. Prior to the submission of the Final Site Plan to the Building Department, the Applicant shall submit documentation to the Board of Health verifying that it has complied with the stormwater permitting requirements as specified by the Federal


A TRUE COPY ATTEST
Jane R. Chen
TOWN CLERK

Clean Water Act National Pollution Discharge Elimination Systems (NPDES), as applicable.

24. Prior to the submission of the Final Site Plan to the Building Department and simultaneous with the submission of a Notice of Intent to the Conservation Commission, the Applicant shall submit a Snow Management Plan to the Conservation Commission. The Snow Management Plan shall include plowing of all fire access ways and pedestrian exit walkways. Snow shall not be stockpiled within any emergency access ways or adjacent to any on-site fire hydrants or within wetland resource areas.

25. The Final Site Plan shall reflect the installation of granite curbing within all improved areas under the jurisdiction of the Conservation Commission with the exception of those locations detailed on the Final Site Plan where a retaining wall is proposed to be constructed at the edge of pavement. The retaining wall shall be raised 6" above the grade of the pavement.

26. On-site catch basins shall be equipped with four (4') foot sumps, oil absorbent pillows and oil/water separating hoods.

27. Prior to the submission of the Final Site Plan to the Building Department and simultaneous with the submission of a Notice of Intent to the Conservation Commission, the Applicant shall submit a Drainage Maintenance Agreement to the Conservation Commission, the Board of Health and the Town Engineer. The Agreement shall indicate that all on-site drainage structures and all paved areas on the Site will be cleaned and maintained at least two (2) times annually, once in the Fall and once in the Spring, and immediately after any chemical release equal to or greater than five (5) gallons. The Agreement shall include a maintenance schedule and the Applicant shall submit maintenance records to the Board of Health as they are generated.

28. All handicapped parking shall be properly posted in accordance with the requirements of the Americans with Disabilities Act. All handicapped accessibility improvements shall comply with Massachusetts Architectural Access Board Rules and Regulations.

29. The Applicant shall be responsible for maintaining the proposed access and driveway as a private way, and shall be responsible for maintaining all improvements within the Project, including but not limited to drainage systems and structures, sewer system, water lines, the roadway surface, curbing, and other required utility improvements, in a satisfactory manner.

A TRUE COPY ATTEST:
Jane R. Clem
TOWN CLERK

30. Prior to the submission of the Final Site Plan to the Building Department the Applicant shall submit a chemical inventory to the Board of Health and the Fire Department which specifies the name and amount of each chemical proposed to be stored on-site. A copy of the material safety data sheet for each item listed on the chemical inventory shall also be submitted to the Board of Health and the Fire Department.

31. There shall be no use of salts or other de-icing chemicals or compounds on the property, except for calcium chloride, pursuant to Article XIV Section 4.4 of the General Bylaw.

32. There shall be no on-site storage of fuels, oils, automotive fluids, fertilizers, pesticides, insecticides, herbicides, cleaning chemicals, and other hazardous materials of significant concern, other than household quantities for domestic use.

33. The Final Site Plan shall reflect the installation and maintenance of a stone apron consisting of 6" or 20 pound stones with an apron at least 30' wide and 50' in length, to be used throughout all construction phases between all work areas and paved areas. Sediment tracked onto paved areas including the internal access drive and Pearl Street, shall be swept at the conclusion of each construction day, until all work areas have been properly stabilized.

34. Prior to the submission of the Final Site Plan to the Building Department and simultaneous with the submission of a Notice of Intent to the Conservation Commission, the Applicant shall submit a Sedimentation and Erosion Control Plan to the Conservation Commission and the Board of Health which shall reflect appropriate measures to protect materials and any adjacent drainage structures from erosion and sedimentation during excavation.

35. A dumpster shall be used during the building construction process to contain waste construction materials and debris.

36. All pavement/asphalt materials removed from the premises shall be properly disposed of by a licensed contractor and documentation of such disposal shall be submitted to the Board of Health and the Conservation Commission.

37. The Applicant shall provide twenty-four (24) hour notice to pertinent Town departments, including the Inspector of Buildings, the Conservation Administrator and the General Development Inspector, prior to commencing any work on the Site.

38. No construction activity shall take place prior to 7:00 a.m. or after 7:00 p.m., Monday through Saturday, and no construction shall be permitted on Sundays, except as may be permitted or otherwise authorized by the Board of Selectmen and the Police Chief.

Kimball Woods Decision – Page 9
August 20, 2002

A TRUE COPY ATTEST:
Jane R. Chew
TOWN CLERK
BURLINGTON, MASSACHUSETTS

39. The southerly property line abutting the Westgate Apartments adjoining the area of proposed construction shall be clearly identified in the field to ensure that any construction activity does not encroach onto the abutting property.

40. The Applicant has requested and the Board of Appeals has granted the following waivers from the local Bylaws and Regulations set forth in Appendix "A" attached hereto and incorporated herein. Minor deviations from applicable local Bylaws and Regulations may be authorized by the Board of Appeals in the subsequent review and approval of the Final Site Plans.

41. This Comprehensive Permit shall control the development of the Project and to the extent of any inconsistency between this Comprehensive Permit and any other instrument, document or agreement delivered as part of the Application for this Comprehensive Permit the terms, conditions and limitations of this Comprehensive Permit and the Regulatory Agreement incorporated by reference herein shall govern and control.

42. Pursuant to 760 C.M.R. 31.08(5), this Comprehensive Permit may be transferred to a person or entity other than the Applicant only with the written approval of the Board of Appeals, which approval shall not be unreasonably withheld or delayed.

This Comprehensive Permit Decision shall not be in effect until a copy of this Decision, bearing the certification of the Town Clerk that twenty days have elapsed and no appeal has been filed, or, that if such appeal has been filed, that it has been dismissed or denied, and is recorded at the Middlesex South Registry of Deeds and indexed in the grantor index under the name of the owner of record, or is recorded and noted on the owner's Certificate of Title. The fee for recording or registering shall be paid by the Owner or Applicant.

On the 20th day of August, 2002, the following Burlington Board of Appeals members voted to grant this Comprehensive Permit Application as stated above:

Kimball Woods Decision – Page 10
August 20, 2002

A TRUE COPY ATTEST
Jane R. Chew
TOWN CLERK
BURLINGTON, MASSACHUSETTS

## REQUESTED EXCEPTIONS FROM LOCAL BYLAWS, POLICIES AND REGULATIONS
## APPENDIX "A"

| I. ZONING BYLAWS | REQUIRED | PROPOSED |
|---|---|---|
| Zoning Bylaw § 2.29 | Frontage | "Frontage" shall mean the line adjacent to (a) any internal site drive of any length which connects to a way described in subclause (b), (c) or (d), below, or (b) a public way which the Town Clerk certifies is maintained and used as a public way, or (c) a way shown on a plan theretofore approved and endorsed in accordance with the subdivision control law, or (d) a way in existence when the subdivision control law became effective in the Town of Burlington, having, in the opinion of the Planning Board, sufficient width, suitable grades and adequate construction to provide for the needs of vehicular traffic in relation to the proposed use of the land abutting thereon or served thereby and for the installation of municipal services to serve such land and the buildings erected or to be erected thereon. Frontage shall be measured in a single, continuous, uninterrupted line along a street or streets. |
| Zoning Bylaw § 4.1.3 | Temporary Accessory Uses | Temporary Building or structure for a period of 1 year |
| Zoning Bylaw § 4.2.1.2 | Garden Apartment dwelling units | Up to 250 Units or as approved by the Zoning Board of Appeals |
| Zoning Bylaw § 4.3.1.4 | Garage space for parking not more than three automobiles | 109 garages spaces or as approved by the Zoning Board of Appeals |
| Zoning Bylaw § 4.4.1 | Principal Uses in a Wetlands District | Under MGL Chpt 131, Section 40 Applicant will submit a Notice of Intent to the Conservation Commission in accordance with 310 CMR 10.05 (e) |
| Zoning Bylaw § 5.1.3 | Garden Apartments limited to 6-12 dwelling units; no more than 2 bedrooms and not less than 50% of units one-bedroom; no living space below finished grade or above second story; no space in an apartment building shall be used for storage of gasoline powered vehicles and equipment or combustible materials not part of the building | High Rise Apartment complex 55% one bedroom & 45% two bedroom units with 109 parking spaces below grade or as approved by the Zoning Board of Appeals |
| Zoning Bylaw § 5.1.4.3 | Accessory use prohibited in front and side yards in RO Zone | See Signage Exceptions & Dimension Exceptions Tables |
| Zoning Bylaw § 5.1.8 | Each dwelling requires separate lot complying with dimensional requirements | See Dimensional Exceptions Table |
| Zoning By-Law § 5.2.0 | Dimensional Requirements | See Dimensional Table Exceptions |
| Zoning By-Law § 6.4.0 | Required Screening | Screening provided per plans |
| Zoning By-Law § 6.5.0 | Landscaping | See Landscaping Plan |

A TRUE COPY ATTEST

*Jane L. Chen*
TOWN CLERK

## REQUESTED EXCEPTIONS FROM LOCAL BYLAWS, POLICIES AND REGULATIONS
### APPENDIX "A"

| I. ZONING BYLAWS (CONTINUED) | REQUIRED | PROPOSED |
|---|---|---|
| Zoning By-Law § 6.6.1 | Determination of Area and Frontage | See Frontage Exception Definition |
| Zoning By-Law § 6.7.1 | Signage | See Signage Exceptions |
| Zoning By-Law § 7.1.0 | Parking and Loading Regulations | See Parking Exceptions |
| Zoning By-Law § 7.5.0 | Parking Structures and Garages for Uses other than one Family Dwellings | 109 below grade parking spaces or as approved by the Zoning Board of Appeals |
| Zoning By-Law § 8.1.0 | 100 Yard Flood Plain District | Under MGL Chpt 131, Section 40 Applicant will submit a Notice of Intent to the Conservation Commission in accordance with 310 CMR 10.05 (e) |
| Zoning By-Law § 8.2.0 | Wetlands District | Under MGL Chpt 131, Section 40 Applicant will submit a Notice of Intent to the Conservation Commission in accordance with 310 CMR 10.05 (e) |
| Zoning By-Law § 9.1.1 | Enforcement - Issuance of Building Permit for plans in compliance with Zoning Bylaw | Process in Compliance with MGL Chpt. 40B |
| Zoning By-Law § 9.1.2 | Occupancy Permit - Issuance of Occupancy Permit for structures constructed in compliance with Zoning Bylaw | Process in Compliance with MGL Chpt. 40B |
| Zoning By-Law § 9.2.0 | Special Permit Requirements, Procedures and Fees | Process in Compliance with MGL Chpt. 40B |
| Zoning By-Law § 9.3.0 | Site Plan | Process in Compliance with MGL Chpt. 40B |
| Zoning By-Law § 9.5.0 | Appeals | Process in Compliance with MGL Chpt. 40B |
| Zoning By-Law § 9.6.0 | Notice of Public Hearings | Process in Compliance with MGL Chpt. 40B |

| II. GENERAL BY-LAW | REQUIRED | PROPOSED |
|---|---|---|
| General By-Law, Article IV §3 | Various approval and/or permit from the Board of Selectmen in its capacity as Board of Public Works having all the powers and duties of Road Commissioners, Water Commissioners, Sewer Commissioners, and the like | The Applicant will comply with all applicable State Laws and Regulations and standard engineering practices with respect to roads, water and sewer systems |
| General By-Law, Article IV §9.1 & Burlington Building Department Schedule of Permits and Fees | Fees for Building Permits and Plan Review | Cap fees for Building Permits and Plan Review at rates in effect at time of application submitted on February 28, 2002 |
| General By-Law, Article XIII §1.2 | Permit from Selectmen to break or dig up any part of a street or remove any earth or gravel | Applicant will comply with state laws and regulations and standard engineering practices |

TRUE COPY ATTEST

Jane R. Chew

TOWN CLERK
BURLINGTON, MASSACHUSETTS

## REQUESTED EXCEPTIONS FROM LOCAL BYLAWS, POLICIES AND REGULATIONS
## APPENDIX "A"

| II. GENERAL BY-LAW (CONTINUED) | REQUIRED | PROPOSED |
|---|---|---|
| General By-Law, Article XIII §1.3 | Permit from Selectmen for access to and from public way of the Town | Site driveway will comply with standard engineering practices |
| General By-Law, Article XIII § 4.0 | Fire Alarm Systems | Applicant will comply with the State Building Code for multi-family residential use and fees shall be capped at the rate in effect at the time of application submitted on February 28, 2002 |
| General By-Law, Article XIV § 1.0 | Local Wetlands By-Law | Under MGL Chpt 131, Section 40 applicant will submit a Notice of Intent to the Conservation Commission in accordance with 310 CMR 10.05 (e) |
| General By-Law, Article XIV § 2.8 | Local Wetlands By-Law Provisions for Solid Waste Disposal | Under MGL Chpt 131, Section 40 applicant will submit a Notice of Intent to the Conservation Commission in accordance with 310 CMR 10.05 (e) |
| General By-Law, Article XIV § 3.0 | Sign Bylaw including permit requirement and limitation on permitted signage | Signage proposal in compliance with non-zoning requirements of State Building Code and standard engineering practices - See Signage Exceptions |
| General By-Law, Article XIV § 4.2 | Removal and addition of earth with permit and performance guarantees | Applicant will comply with standard engineering practices |

| III. SEWER POLICIES | | |
|---|---|---|
| Sewer Policies | Guidelines for Allocation of Sewer Tie-In Permits including permits approvals and signatures from the Board of Selectmen, Superintendent of Burlington Department of Public Works and/or Building Inspector | Sewer Connection Permit from Department of Environmental Protection (DEP) |

| IV. BOARD OF HEALTH RULES & REGULATIONS | | |
|---|---|---|
| Burlington Board of Health Rules and Regulations | General procedures and regulations pertaining to construction and drainage | All construction shall be in compliance with the Massachusetts DEP and Under MGL Chpt 131, Section 40, Applicant will submit Notice of Intent to the Conservation Commission in accordance with 310 CMR 10.05 (e) |

| V. SIGNAGE | REQUIRED UNDER SINGLE FAMILY (RO) DISTRICT | PROPOSED |
|---|---|---|
| Residential Sign Area | 1 square foot or less | 3 wall signs for designation of entrances. Each sign will not exceed 5 square feet TRUE COPY ATTEST |

*Jane R. Chen*
**TOWN CLERK**
BURLINGTON, MASSACHUSETTS

## REQUESTED EXCEPTIONS FROM LOCAL BYLAWS, POLICIES AND REGULATIONS
## APPENDIX "A"

| VI. PARKING | REQUIRED UNDER GARDEN APARTMENT (RG) DISTRICT | PROPOSED |
|---|---|---|
| Number of parking spaces for multi-family dwelling | 1.5 plus seasonal storage - 1.5 per unit = 303 | As approved by the Zoning Board of Appeals |
| Standard Car space | 9 x 18 feet | 9 x 18 feet |
| Compact Car space | 8 x 15 feet | 8 x 15 feet |
| Handicapped Car space | In accordance with Massachusetts Architectural Access Board requirements | Dimensions and quantity of spaces in accordance with Massachusetts Architectural Access Board |
| Structured Parking space | not permitted | As approved by the Zoning Board of Appeals |

| VII. CONSERVATION COMMISSION | REQUIRED | PROPOSED |
|---|---|---|
| Local Bylaws and Policies | Local Policies and Fees | Under MGL Chpt 131, Section 40 applicant will submit a Notice of Intent to the Conservation Commission in accordance with 310 CMR 10.05 (e) |

| VIII. SITE PLAN RULES AND REGULATIONS | REQUIREMENT | PROPOSED |
|---|---|---|
| Section 1.6 Surveying and Drafting Requirements | Surveying and Drafting Requirements | Preliminary Site Plan shall be submitted in Compliance with 760 CMR 31.02 (2) |
| Section 1.7 Submission Requirements and Plan Form and Content | Submission Requirements and Plan Form and Content | Preliminary Site Plan shall be submitted in Compliance with 760 CMR 31.02 (2) |
| Section 1.8 Filing Fees | Filing Fees | Applicant shall submit required $5,000.00 filing fee in accordance with Board of Appeals Fee Schedule |
| Section 1.9 Project Review Fees | Project Review Fees | Any Peer Review requested by Board of Appeals shall cap fees at $15,000 |

# REQUESTED EXCEPTIONS FROM LOCAL BYLAWS, POLICIES AND REGULATIONS
## APPENDIX "A"

| IX. DIMENSIONAL REQUIREMENTS | REQUIRED UNDER SINGLE FAMILY (RO) DISTRICT | GARDEN APARTMENT (RG) DISTRICT | PROPOSED |
|---|---|---|---|
| Minimum Lot Area | 20,000 | 120,000 | 30+/- acres |
| Minimum Lot Frontage | 100 | 100 | 30' (easement) |
| Minimum Front Yard | 25 | 50 | 3' |
| Minimum Side Yard | 15 | 50 | 120' |
| Minimum Rear Yard | 15 | 50 | 400' |
| Minimum Yard Adjoining RO & RG | n/a | 50 | 140' |
| Maximum Aggregate Building to Ground Area Percentage | n/a | n/a | As approved by the Zoning Board of Appeals |
| Maximum Building & Structure Height | 30' | 30' | As approved by the Zoning Board of Appeals |
| Minimum Feet Between Buildings | n/a | 50 | N/A |
| Maximum Floor Area Ratio | n/a | n/a | As approved by the Zoning Board of Appeals |
| Impervious Surface Area | n/a | n/a | 7% |
| Wetland Area | n/a | n/a | 90% |

A TRUE COPY ATTEST:

Jane R. Chen

TOWN CLERK
BURLINGTON, MASSACHUSETTS